## Stepp's Administrator et al. v. Pauley.

(Decided Nov. 22, 1935.)

J. B. CLARK for appellants.

W. R. McCOY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

Appellee is the mother of Marion Stepp who died intestate in March, 1929, leaving surviving a widow, Virgie Stepp, and two infant children, aged four and six years, respectively. Upon order of the county court, Martin Stepp, a brother of decedent, was appointed and qualified as administrator of the estate.

On October 28, 1930, seventeen months after death of Marion, appellee by petition in equity, and a later amended petition, set out that the estate was indebted to her in the sum of $1,310, itemized as follows:

One note for $200, executed by Marion Stepp on February 14, 1929, due in six months; one note due from the estate for $100, dated May 14, 1929, due in six months; one note for $830, dated April 9, 1930, due in six months; and a claim for $45, which she say she had loaned Marion, $25 for a sewing machine sold him, and $110 paid for his funeral expenses.

She alleged that there was not sufficient personal property in the hands of the administrator to pay any part of her debt; that decedent left a tract of land of about twenty acres, and she sought a sale of so much thereof as would satisfy her claims. She also asked for a settlement of the estate.

Such pleadings as were filed by defendants, appellants here, raised issue as to the validity of each and all of the items claimed by appellee on the ground that none of them represented valid obligations of Marion Stepp, or his estate, as they had been created by the administrator and were not of such nature as he, as such representative, had authority to create so as to bind the estate.

Upon appellee's motion, and without objection, the cause was referred to the master commissioner for report, and later that officer reported that deceased had

left no personal property, save a few household effects (which apparently were turned over to the widow); that the four items set out above were valid claims against the estate. He also found that the deceased was the owner of the twenty-acre tract of land.

Appellants filed exceptions to the commissioner's report, specifically objecting to the allowance of the four items mentioned. The widow filed an exception to the report on the same grounds, but further asserted that the "commissioner failed to consider her evidence, and had failed to make findings for her and her infant child." Her exceptions, in part, related to her claim that she was entitled to exemption, and to a one-third interest for life in the real estate, but it is pleaded that she had divested herself of all interest in her late husband's estate, and this she does not deny.

The cause was submitted to the court on the exceptions to the commissioner's report, and the court overruled the exceptions and adjudged that the plaintiff recover the sums evidenced in the four items allowed by the commissioner, and that no personal property had come to the hands of the administrator out of which to pay debts adjudged due. He then ordered the sale of the real estate, and adjudged that the widow had divested herself of any interest in the property of deceased, and directed the commissioner to report his acts under the order at the next term of court. The defendants excepted and prayed an appeal to this court.

Counsel for appellant argues at length that the judgment should be reversed because the administrator was not liable for the judgment debt as rendered by the court. While the judgment seems to have gone against the administrator, it recites that nothing came to his hands, and further adjudges the land sold to pay the debts. This is not a direct judgment against the administrator. It is also argued that the heirs are not liable for the debts of their ancestors for any greater amount than the extent of personal property that came to them through administration. This is true, but here we have a creditor's suit to sell lands for the payment of allegedly just claims against a decedent's estate, and there is no personal judgment against the heirs.

As we view the record, there is only one question presented, and that is as to whether or not the commis-

sioner properly allowed the claims presented by the appellee. We are of the opinion that in this particular he did not correctly allow two of the four items.

We may at the outset dismiss from consderation two of the items allowed: (1) The funeral expenses paid by appellee, and (2) the note for $200 admitted as having been executed by deceased prior to his death. It is clear from the proof that neither the $100 note nor the $830 note were executed by the deceased. In fact, it is admitted by the administrator that both were executed by him, and he says that the estate of Marion Stepp never got "one dime's" benefit from the proceeds.

The appellee says the notes were executed by Martin; she does not seem to know when, where, or for what. Her testimony is so vague, uncertain, and hazy as to be of little or no probative value. The most we can make of it is that she and the administrator were trading and trafficking on matters that involved their personal affairs, and had no direct or indirect relation to or bearing upon the settlement of the estate of deceased. The check which appellee filed as showing the foundation of the $100 note was payable to Martin Stepp, and he so indorsed it. There is some proof that this money was advanced to him for his aid when he was under indictment for forging appellee's name to a check of the same amount.

The $830 was executed by Martin Stepp's administrator one year or more after Marion's death. Appellee says she let Martin have $800 in cash on this note. She claims, but utterly fails to show, that it was for Marion's indebtedness, and likewise completely fails to show in what way Marion's estate benefited or could have in any measure benefited by her advancement.

In addition to the conclusion that the claimant failed to show wherein the estate, or Marion Stepp before his death, received any benefits from her alleged advances of money, the administrator emphatically says that the estate received nothing thereby.

He says the note for $830 executed by him was given to take up a claim for $300 attorneys' fees for assisting in the prosecution of a man who had killed Marion Stepp; $25 for a sewing machine, which appellee afterwards got and turned over to some one else; that it also included the $200 note which Marion had

executed to appellee prior to his death; $50 was a debt owing personally to him, and the $100 note was to recoup her on the amount she had advanced to help him out of his indictment trouble; the $110 funeral expenses, and the $45 alleged loan. Appellee, in rebuttal, does not deny this statement of the administrator. She was not able to produce any check showing the passing of any part of this $830 to any one. When asked whether she paid him in cash or by check, she said, "Well, I don't remember—he worked it so many different ways; don't remember whether I give him check or not—think I did." Again she said it was Marion's indebtedness, but that Martin got the money.

As said, the only question which we are called upon to decide is whether or not the court was in error in overruling appellants' exceptions to the commissioner's report. The recital of portions of the evidence hereinabove sufficiently indicates our views. The court properly overruled the exceptions to the report, in so far as applicable to the note executed by Marion Stepp, and the claim for funeral expenses, although on this claim there is some question as to the exact amount due, the difference in dispute being $5 or $10, which is not of enough importance to require us to disturb the court's findings thereon. With regard to the other two items, the $100 and the $830 notes, the evidence adduced was totally insufficient to sustain either of these claims against Marion Stepp's estate, and the court erred in overruling the exceptions to so much of the report as allowed them.

Counsel for appellants insist that the court erred in allowing appellee's attorney a fee of $100. This argument is directed at the allowance of any sum, and at the amount of the fee. We note that in the judgment the court adjudged a reasonable fee to be charged against the estate. Later in an order, the fee was fixed at $100, the allowance being made to the attorney, and to this order there was no objection.

However, this contention may be disposed of on another. ground. The attorney, to whom the fee was allowed, is not made a party to this appeal.

In the case of City of Richmond v. Durham, 260 Ky. 95, 3 S. W. (2d) 879, 880, where a similar question was before the court, it was said:

"The trial court, taking the view that this action was 'too friendly,' appointed two attorneys to defend it, and allowed them a fee to be taxed as costs. Appellant complains of this action, but has failed to make either of the attorneys a party to this appeal. Under these circumstances, we are not at liberty to consider the question. Bartlett v. Louisville Trust Co., 212 Ky. 13, 277 S. W. 250."

The judgment is therefore reversed as to the court's action in overruling exceptions to the items consisting of the $100 and $830 notes, and cause remanded with directions to enter appropriate orders to this effect; in other respects, it is affirmed. Affirmed in part and reversed in part.