## Crum's Adm'r et al. v. Crum et al.

(Decided March 13, 1936).

WILLIS STATON, EDWARD L. ALLEN and W. H. D. PREECE for appellants.

W. T. CAIN and W. R. McCOY for appellees.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Martin circuit court sitting in equity. Frank Crum, a World War veteran, died intestate some years prior to 1931. He had a policy of War Risk insurance in which his mother, Jane Crum, was designated as beneficiary. Mrs. Crum was paid the regular monthly installments of $57.50 up until the date of her death in the latter part of 1931. At that time the balance due on the policy was $3,931.90. Ulyssus Crum, a brother of Frank Crum, was appointed administrator of his estate, and collected this balance as administrator from the government. In June, 1932, the administrator filed this suit, in which he undertook to set up a claim in himself to the entire proceeds of the policy (which was never proved), and, failing in establishing his own

claim, he asked for the direction of the court as to the manner in which, and those to whom, the distribution of said money should be made.

It was established that the father of Frank Crum predeceased him; that at the time of his death he was survived by his mother, Jane Crum, by his brother, Ulyssus Crum, and by a nephew, Curtis Crum. The record is most confusing as to the exact relationship of the various other parties. Curtis Crum, in his testimony, refers to Frank Crum as his half-uncle, while he is mentioned in the briefs and elsewhere in the record as the son of a full sister of the deceased. Frank Crum was likewise survived by Lafayette Crum, Jennie Crum, and Betty Smith, who are referred to as his nephew and nieces in appellants' brief, and as half-brother and half-sisters in appellees' brief. The pleadings and testimony are equally uncertain, although the judgment finds that the three persons last mentioned were half-brother and half-sisters to the decedent. To add to the confusion, appellant testified that Betty Smith had the same father as the decedent, but a different mother, but no attempt was made anywhere in the record to explain why her last name should be different, and it is nowhere disclosed whether Lafayette and Jennie Crum are related through decedent's father or his mother. Whatever may be the true relationship, it is apparent that Jane Crum was the only heir of Frank Crum at the date of his death, and it is her estate, therefore, which was entitled to the balance due on the policy. Appellant refers us to the case of Sutton's Ex'r v. Barr's Adm'r, 219 Ky. 543, 293 S. W. 1075, in which it was held that the unpaid balance due under a War Risk policy on the death of the designated beneficiary should be paid to the heirs of the insured in being at the time of the beneficiary's death. This case, however, was expressly overruled in Flowers v. Flowers' Adm'r, 249 Ky. 203, 60 S. W. (2d) 596, and this court has aligned itself with the ruling of the Supreme Court of the United States in Singleton v. Cheek, 284 U. S. 493, 52 S. Ct. 257, 259, 76 L. Ed. 419, 81 A. L. R. 923, wherein it was said:

> "All installments, whether accruing before the death of the insured or after the death of the beneficiary named in the certificate of insurance, as a result, became assets of the estate of the in-

sured as of the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary.''

It is clear from the foregoing discussion that it was the duty of the administrator of Frank Crum to pay the balance of the insurance money, after deducting the costs and expenses of administration, to the estate of Jane Crum. Having reached this conclusion, we may proceed with the second phase of the litigation now before us.

Jane Crum left a will by which she devised her residuary estate to her grandson, Curtis Crum. After this suit was filed, a written contract was entered into between Curtis Crum and the appellant Ulyssus Crum, individually and as administrator of the estate of Frank Crum, whereby Curtis accepted the sum of $1,025 in full settlement of any and all claims he might have in the fund in question. That settlement has never been attacked for fraud or mistake, and Curtis Crum is not a party to this appeal. We may take it as settled, therefore, so far as this appeal is concerned, that Curtis Crum is no longer interested in the estate either as an heir of Frank Crum or as the legatee of Jane Crum. Obviously, the appellees here who are relatives by the half-blood have no interest in the fund in question by virtue of being heirs of Frank Crum. The only persons actually interested in the fund are those who are entitled to any undevised property as heirs of Jane Crum. However, appellees claim that an *oral* agreement of compromise of their claims was entered into between the appellant administrator and themselves, through W. T. Cain, their attorney, who was also the attorney for Curtis Crum, at the same time that Curtis Crum released all claims that he had to the fund in question. The chancellor found that a compromise was entered into between the administrator and the defendants ''through Curtis Crum and W. T. Cain, their attorney,'' apparently on the idea that the written settlement with Curtis Crum omitted through mistake to settle the claims of his brother and sister by the half-blood. Aside from the inherent improbability of such an agreement, and aside from the fact

that the written contract between appellant and Curtis Crum expressly provides, ''This contract does not in any way settle Bettie Smith, Jennie Crum and Lafayette Crum, claim,'' the appellees expressly elected to stand on a parol contract, and not on a reformed written contract. Furthermore, the only testimony indicating what was claimed to be omitted from the written contract is stated by the appellees' attorney to be ''that Liss Crum, through his attorney, Mr. Preece, was to pay to the other three (3) children who was half-bloods, at the October term of the Martin Circuit Court, their part.'' As will be seen from the foregoing discussion, ''their part,'' so far as the estate of Frank Crum was concerned, was nothing. No witness undertook to say that the appellant agreed either orally or in writing to pay any specific sum to the appellees or to do more than pay them ''their part.'' Appellant and his attorney deny making any agreement in regard to any one other than Curtis Crum. It is clear that the chancellor erred in sustaining the alleged oral compromise and in giving judgment to appellees in a specific amount determined to be ''their part.''

In addition to the foregoing, it may be observed that this suit was treated by the chancellor as a suit to settle the estate of Frank Crum, and by his judgment he did actually settle the estate. It is well established that after a suit has been filed to settle an estate, the chancellor directs the administration and it is not competent for the personal representative, *unauthorized by the court,* to enter into contracts by which the jurisdiction and control of the court over the estate might be ousted or the rights of other litigants or claimants be changed or postponed. Ky. St. sec. 3882; Hudson's Adm'x v. Collins, 239 Ky. 131, 38 S. W. (2d) 975; Trevathan's Ex'r v. Dees' Ex'rs, 221 Ky. 396, 298 S. W. 975; Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21, 110 S. W. 361, 33 Ky. Law Rep. 457, 17 L. R. A. (N. S.) 1122. It is not claimed that the administrator had prior authority to compromise with the appellees, and even if the judgment of the chancellor be considered as a subsequent approval, such approval, under the circumstances presented here, would be a clear abuse of his discretion.

The appellant administrator should pay the bal-

ance of the insurance money in his hands, after deducting the costs and expenses of this suit, to the estate of Jane Crum, to be distributed amongst her heirs. The costs of this appeal will be paid from the estate of Frank Crum.

Judgment reversed for proceedings consistent herewith.