770 So.2d 562 (2000)
Brandy Jo Johnson DANIEL, Appellant,
v.
Derrell Pat DANIEL, Appellee.
No. 1999-CA-00104-COA.
Court of Appeals of Mississippi.
November 7, 2000.
Oby Thomas Rogers, Collins, Attorney for Appellant.
*563 David Shoemake, Collins, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND THOMAS, JJ.
BRIDGES, J., for the Court:

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 1. On October 20, 1997, Derrell Pat Daniel filed his complaint for divorce and other relief against Brandy Jo Johnson Daniel on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. On November 12, 1997, a temporary judgment was entered providing for temporary joint legal and physical custody, Derrell to have the initial custody for ten days and then to have visitation every other weekend after the initial ten days.
¶ 2. On May 5, 1998, the parties agreed and filed a motion to withdraw all fault grounds in the divorce. A divorce on the ground of irreconcilable differences was requested. The parties further requested that the chancellor resolve all child support and child custody issues. This appeal ensued from the chancellor's decision that Brandy and Derrell would share joint legal custody of the minor child by alternating custody every two weeks until the child reaches the age of five and may attend kindergarten. At the time of the child turning five and beginning kindergarten, physical custody of the child will then lie with Derrell. The following issues are raised for our consideration on this appeal:
I. THAT THE CHANCELLOR ERRED IN APPLYING THE ALBRIGHT FACTORS TO THE FACTS OF THE CASE WHEN HE RULED THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILD TO BE SPLIT ON A ROTATING TWO WEEK BASIS BETWEEN THE PARENTS IN DIFFERENT STATES.
II. THAT THE CHANCELLOR ERRED IN PROVIDING FOR A FUTURE CHANGE OF CUSTODY OF THE MINOR CHILD OF THE PARTIES WITHOUT PROVIDING IN HIS RULING A BASIS FOR THAT DECISION.
¶ 3. Pertinent to the facts of this case are the findings of the chancellor in his assessment of the Albright factors used in his determination of the custody of the minor child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The chancellor's findings stated:
[T]his Court finds that the mother is superior in two factors. The father is superior in two factors. If, in fact, this Court has the authority and has the obligation to weigh those factors, then the Court will do so prior to making a final determination as to the custody of the minor child ... since this Court has found that both parents are fit and proper, I am going to grant legal and physical control of the minor child to both parents. I'm going to alternate the child every two weeks with each parent.
In his final judgment, the chancellor ruled:
The Court further finds that the parties shall continue to alternate weeks of custody as set forth in the ruling from the Bench and make that ruling a permanent ruling until the child reaches the age of five and would begin five year old kindergarten. Once the child begins five year old kindergarten then at that time the primary physical custody of said minor child shall be placed with the father with the mother and father exercising joint legal custody and with the mother having custody of the child on the following times and periods....
The chancellor went on to enumerate the specific dates that Brandy Jo would have physical custody of the minor child, laying out for both parties the exact times which the child should be picked up and returned by Brandy during these periods.
¶ 4. In her appeal, Brandy challenges the findings of the chancellor and contends that he committed error in his evaluation *564 of the Albright factors and in his final decision. Finding no errors that would require a reversal in this case, we affirm the ruling of the chancellor.

STANDARD OF REVIEW
¶ 5. The standard of review that must be adhered to by this Court is found in the case of Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997): "This Court does not reevaluate the evidence, retest the credibility of witnesses, nor otherwise act as a second fact-finder. Unless the Chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard, we will affirm." Furthermore, this Court must not overturn the chancellor's decision if there be substantial evidence in the record to support his findings of fact. Smith v. Jones, 654 So.2d 480, 485 (Miss.1995).

LEGAL ANALYSIS
¶ 6. It is well recognized by this Court that in matters of child custody, "the polestar consideration is the best interest of the child." Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994); Moak v. Moak, 631 So.2d 196, 198 (Miss.1994); Albright, 437 So.2d at 1005. Furthermore, when a chancellor is determining child custody, it has been established that he should consider the Albright factors in coming to his decision about the child's best interest. Albright, 437 So.2d at 1005. Those twelve factors include:
1. Health and sex of the child;
2. Which parent had the continuity of care prior to the separation of the parties;
3. Which parent had the best parenting skills;
4. Which parent has the willingness and capacity to provide primary child care;
5. Each parent's employment and their responsibilities in that employment;
6. Physical and mental health and age of the parents;
7. Emotional ties between the child and parents;
8. Moral fitness of the parents;
9. The home, school and community record of the child;
10. If the child is twelve years old or older, the child's preference;
11. The stability of the home environment and employment of the parents;
12. Any other factors relevant to the parent/child relationship.
Id.
¶ 7. In Hamilton v. Hamilton, this Court reviewed the record in that case and found that the chancellor should consider each Albright factor specifically in his decision for child custody. Hamilton v. Hamilton, 755 So.2d 528, 531 (Miss.Ct.App. 1999). See also Hayes v. Rounds, 658 So.2d 863, 865 (Miss.1995). We found that it was not enough for the chancellor to simply state that he considered these factors. Hamilton, 755 So.2d at 531; Hayes, 658 So.2d at 865. There is no question with this Court on the issue of whether the chancellor in this case specifically considered each Albright factor listed above. The chancellor listed each of the factors one by one and, in our opinion, addressed each factor appropriately, even acknowledging those factors that were not necessarily applicable by stating why they did not require such consideration. Moreover, we cannot say that his conclusions as to each of these factors were not supported by substantial evidence. We are convinced that the chancellor in this matter acted with the best interest of the child when deciding the outcome of this case, as evidenced by his careful analysis of each Albright factor and his recitation of that analysis to the parties in open court. It is our opinion that chancellors should conduct their investigation into the best interest of the child in just such a manner as was done here, leaving the parties with no questions as to how such a decision was reached and providing them with full *565 knowledge that the chancellor considered all points that were required of him under the law.
¶ 8. Brandy disputes that the chancellor reached a just decision in giving primary custody of the child to Derrell after the child reaches the age of five year old kindergarten. We believe that he did. In his dissection of each of the Albright factors, he came to the conclusion that Brandy and Derrell were both superior in two of the factors and were equally balanced on the remaining eight. Brandy argues that the chancellor had no basis for deciding primary custody in favor of Derrell after the child turned five. However, looking at the chancellor's judgment, we find that his decision should not be overturned.
¶ 9. Specifically, we look to the particular Albright factors that the chancellor found to be in favor of Derrell. First, it was decided that Derrell was more morally fit than Brandy. Secondly, Derrell was declared to be able to provide the most stable home environment for the child. Brandy cites a case written by this Court that provides that moral unfitness cannot alone be used punitively against a party by denying custody to that party. Sullivan v. Stringer, 736 So.2d 514, 518 (Miss.Ct.App. 1999). While we remain faithful to that concept, we believe that Brandy's concern on this issue is misplaced in this case. In the first place, our opinion in Sullivan, along with other opinions coming out of the Mississippi Supreme Court dealing with this issue, primarily center around petitions for modification of child custody, where a party cites a significant change in circumstances since the initial decree, rather than an initial decree itself providing for near-future changes as does the decree in our case at bar. Id.; Riley v. Doerner, 677 So.2d 740, 745 (Miss.1996); Law v. Page, 618 So.2d 96, 102 (Miss.1993); Phillips v. Phillips, 555 So.2d 698, 701 (Miss.1989). In the case at bar, we are dealing with the chancellor's initial ruling as to the placement of this child, not a custody change. Secondly, it is our opinion that even if the subject of argument in the Sullivan case were the initial order of custody rather than a modification of the same, we find that the chancellor's decision in this case did not turn solely on Brandy's behavior as in Sullivan. Sullivan, 736 So.2d at 515. It is true that "courts now consider the best interest [of the child] rule, not marital fault, as the primary guide in custody determinations." Carr v. Carr, 480 So.2d 1120, 1122 (Miss.1985). However, it is our opinion that the chancellor in the instant case rested his decision on other factors pertinent to the best interest of the child, not simply the moral questions surrounding Brandy as she would suggest.
¶ 10. Brandy further argues that the chancellor's decision prevents her from seeking modification of custody in the future. We disagree. We find that the chancellor's decision in no way bars Brandy from petitioning the court for future custody modification if, as the law prescribes, she can demonstrate that there is a material change in circumstances that would, in the child's best interest, necessitate such a modification. Riley, 677 So.2d at 743.
[A] chancellor is never obliged to ignore a child's best interest in weighing a custody change; in fact, a chancellor is bound to consider the child's best interest above all else.... [I]t should not thwart the chancellor from transferring custody of a child from one parent to another when, in the chancellor's judgment, the child's welfare would be best served by such transfer.
* * *
[N]o rigid test or magic words should stand in the way of the chancellor as he or she acts to improve the child's welfare through a modification of custody... [A] chancellor's ultimate concern must always be whether such change would be in the child's best interest. *566 Id. at 744-45. This Court is convinced that if Brandy can demonstrate the need for such a modification in the future, in accordance with the precedent set out above, then her chance to change custody stands as any other non-custodial parent and is not hindered or prevented by the chancellor's decision here.
¶ 11. Moreover, we find no authority that would prohibit a chancellor from entering an initial judgment which includes provisions for both present and near-future custody arrangements of a child. Brandy has not pointed this Court to any such case law that would say otherwise. We are of the opinion that the chancellor was within his bounds to make such a decision.
¶ 12. Brandy asserts that the chancellor gave no reason for placing primary custody with Derrell after the child reaches the age of five year old kindergarten. It is our opinion that the chancellor was clear in his reasoning. We are convinced that one of the key factors in the chancellor's decision involved the stable home life of the child at the start of the child's school years. In recognizing this, we note once again that the factor involving stability of the home under Albright was declared by the chancellor to be in favor of Derrell here. Therefore, we are convinced that the chancellor's decision was based on substantial evidence.
¶ 13. The Albright factors that were found by the chancellor in favor of Brandy were the age and sex of the child and the continuity of care. The chancellor stated that he did give consideration to the tender years doctrine in his evaluation of the age and sex of the child. Brandy argues that, according to that doctrine, she should have been awarded primary custody of the child. Again, we look to the case of Albright for our direction in this matter. Albright, 437 So.2d at 1004. That case provides that "neither parent has any right paramount to the right of the other parent concerning the custody of the minors...." Id. Further, the Albright court directs that, while the tender years doctrine is still a consideration to be given when a chancellor is deciding the custody of a minor child, "the rule is not absolute, and where unfitness of the mother is found, then the rule is not applied." Id. "Age should carry no greater weight than other factors to be considered...." Id. at 1005. Here, we find that the chancellor gave the proper contemplation to the tender years doctrine. We find no authority that dictates that the age of the child or "tender years" should rule the custody decision, but rather, we note that "over the years [the tender years] doctrine has been slowly eroded to that of a presumption rather than a rule." Albright, 437 So.2d at 1005. "It hardly seems rational that the age of the child should per se lead to any particular result. While [a] maternal preference has often been cited as an important factor in determining custody, the cardinal principle remains what is in the best interest and welfare of the minor child." Cheek v. Ricker, 431 So.2d 1139, 1145 (Miss.1983). As we pointed out previously, we are of the opinion that the chancellor did, in fact, put a great deal of emphasis on the best interest of the child in his reasoning and found that the tender years of the child was not the deciding factor in this case.
¶ 14. The chancellor here indicated his concern for the situation in which the child would be placed if primary custody were to lie with Brandy. For example, he discussed certain actions by Brandy which he construed to be detrimental to the child and he noted that, while the child had some family ties in Arkansas, he believed the child's family ties in Mississippi to be stronger and more stable. Further, he found Derrell's home provided more security to the child in light of circumstances which the chancellor found to be potentially harmful to the child if the child were to remain in Arkansas with Brandy. It is our opinion that the chancellor did not err in finding that Derrell should receive primary custody of the child after she has reached the age of five year old kindergarten. As *567 is set out in the standard of review, our task is not to re-weigh the evidence and facts of this case, but rather to be certain that the chancellor was not manifestly wrong in his application of the law. Smith, 654 So.2d at 485.
¶ 15. Furthermore, we will not disturb the chancellor's order that Brandy and Derrell should have rotating custody every two weeks. We are aware of the fact that a practice of constantly alternating a child back and forth to each parent is not a habit that should be encouraged. The Mississippi Supreme Court has spoken on this issue on more than one occasion, ruling that "it is not in the best interest of a small child to be shifted from parent to parent." Case v. Stolpe, 300 So.2d 802, 804 (Miss.1974). See also Brocato v. Walker, 220 So.2d 340 (Miss.1969). However, in this case, we are mindful that the child is nearing the age of five year old kindergarten and has been subjected to the rotating custody order since the chancellor's judgment was handed down on December 15, 1998. We therefore can see no reason why what has become the child's regular routine should be interrupted. Nonetheless, we agree with the chancellor that at such time as the child begins kindergarten, it will be necessary for the child to maintain the stability that is crucial at the beginning stages of her education. We are not convinced that this child will be adversely affected by such an arrangement and taking in all of the surrounding circumstances and the findings of the chancellor, we can find no grounds on which to reverse his decision. This Court recognizes that the chancellor was very liberal in his custody award, allowing Brandy generous visitation with the child. It is for these reasons that we do not upset the conclusions of the chancellor.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF COVINGTON COUNTY IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. LEE, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, J.
LEE, J., concurring:
¶ 17. I concur with the majority. The learned chancellor reviewed the facts very carefully. The chancellor correctly applied the Albright factors and granted joint legal custody to both parents. I write this opinion to focus on the fact that the chancellor granted joint custody to the parents after having granted the parents a divorce on irreconcilable differences. I have previously argued in Morris v. Morris, 758 So.2d 1020 (¶¶ 15-19) (Miss.Ct.App.1999), and Wolfe v. Wolfe, 766 So.2d 123 (¶¶ 24-29) (Miss.Ct.App.2000), contrary to the majority in both cases, that the chancery court has the authority over the custody of minors and is not precluded by Miss.Code Ann. § 93-5-24(2) (Rev.1994) from awarding joint custody in an irreconcilable differences divorce. To do otherwise is nonsensical. As stated by the majority, it is well recognized by this Court that in matters of child custody, "the polestar consideration is the best interest of the child." Sellers v. Sellers, 638 So.2d 481, 485 (Miss. 1994); Moak v. Moak, 631 So.2d 196, 198 (Miss.1994); Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). After this Court's holdings in Morris v. Morris and Wolfe v. Wolfe, it is refreshing to concur with the majority's affirmance in this case.
MYERS, J., JOINS THIS SEPARATE WRITTEN OPINION.