# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00173-COA

DEBRA THAMES                                                                    APPELLANT

v.

CHRISTOPHER THAMES, SR.                                                          APPELLEE

DATE OF JUDGMENT:            01/10/2014
TRIAL JUDGE:                 HON. DAN H. FAIRLY
COURT FROM WHICH APPEALED:   RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      TAMEKIA ROCHELLE GOLIDAY
ATTORNEY FOR APPELLEE:       TRACY STIDHAM STEEN
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:     GRANTED AN IRRECONCILABLE-
                             DIFFERENCES DIVORCE AND AWARDED
                             JOINT PHYSICAL AND LEGAL CUSTODY
                             OF THE PARTIES' MINOR CHILD
DISPOSITION:                 REVERSED AND REMANDED: 07/28/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1.    This appeal arises from an initial custody determination. Finding the custody arrangement to be impractical, we reverse the judgment of the Rankin County Chancery Court and remand the case for further proceedings as discussed below.

FACTS AND PROCEDURAL HISTORY

¶2.    Debra Thames and Christopher Thames Sr. were married on May 10, 2008. On January 24, 2012, their daughter, Sofia Ocie Thames, was born. The Thameses lived together as a family in Brandon, Mississippi, until January 30, 2013, when Debra moved to

San Antonio, Texas, taking their daughter with her.

¶3. On February 15, 2013, Christopher filed for divorce alleging two fault-based grounds or otherwise asking the Rankin County Chancery Court to grant an irreconcilable-differences divorce. On May 2, 2013, a temporary hearing was held. A temporary order resulting therefrom was entered nunc pro tunc on December 12, 2013. The temporary order awarded Debra physical and legal custody of Sofia and awarded Christopher alternating monthly visitation.

¶4. On September 16, 2013, the day of the final hearing, the parties filed a joint motion and consent to trial and divorce on the ground of irreconcilable differences, and agreed to submit to the chancellor the issues of physical and legal custody of Sofia, visitation rights of the non-custodial parent, and child support. This joint motion was granted the same day. At the final hearing, the chancellor conducted an *Albright*[1] analysis, finding the factors weighed equally for both parents. A final judgment was entered on January 10, 2014, granting the parties joint legal and physical custody, with physical custody to alternate back and forth between the parents on a monthly basis until Sofia starts five-year-old kindergarten.

¶5. Debra now appeals, asserting that (1) the chancellor erred in failing to administer complete relief as to every portion of the controversy, and (2) the custody arrangement is impractical.

## STANDARD OF REVIEW

¶6. In domestic-relations cases, we "will not disturb the findings of a chancellor when

---

[1] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard[.]" *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010). We review questions of law de novo. *Id*.

## DISCUSSION

### I. ADMINISTRATION OF COMPLETE RELIEF

¶7. Debra argues that the chancellor erred in failing to administer complete relief as to every portion of the controversy, violating the maxim that "equity delights to do justice completely and not by halves[.]" *Humble Oil & Refining Co. v. Rankin*, 207 Miss. 402, 412, 42 So. 2d 414, 417 (1949). She argues that the chancellor erred when he failed to decide who would have sole custody of Sofia when she started five-year-old kindergarten. This issue was addressed in a jurisdictional context in *Crider v. Crider*, 905 So. 2d 706, 707-08 (¶¶3-5) (Miss. Ct. App. 2004), which was reversed on other grounds. This Court stated that "to evaluate the issues presented on appeal, the case must be properly in our jurisdiction. Only a final order in which no issues remain to be resolved may be appealed." *Id.* at 707 (¶3).

¶8. In *Crider*, "the chancellor awarded joint legal and physical custody of the child until June 2005, which was the start of the summer before the [child] would enter school. The chancellor directed that the matter be set for review in June 2005 to reevaluate custody." *Id*. at (¶2). After noting that "[d]omestic judgments are frequently the subject of additional proceedings" and that "[m]odifications are constantly sought," this Court held that formal

recognition of the need to revisit custody at a specific time in the future did not prevent the 2003 judgment from being final. *Id.* at 707-08 (¶¶4-5) (citation and quotations omitted). This Court stated that "[w]hether stated explicitly as here or left unstated, custody orders may be modified." *Id.* at 708 (¶5).

¶9.   In this case, the chancellor laid out a detailed visitation schedule, which began October 5, 2013 and ends February 4, 2017.  Save for December and January, where one parent has physical custody of Sofia for two months depending on the year, physical custody alternates back and forth between the parents on a monthly basis until Sofia starts five-year-old kindergarten.  The order states:

> The parties will alternate this visitation schedule until further Order of the Court.  This schedule will remain in effect until such time as either the State of Mississippi or the State of Texas, whichever is earlier, requires mandatory attendance in five (5) year old kindergarten when the child turns five (5) before the month of September.

During the final hearing, the chancellor gave the parties the option of agreeing to a review hearing in January 2017 or making the judgment final and appealable according to Rule 54(b) of the Mississippi Rules of Civil Procedure.  The judgment was not certified as a Rule 54(b) final judgment and any agreement to set a hearing to review custody in January 2017 was not included in the record.

¶10.   While Debra does not argue that the judgment was not final and appealable, the underlying issue is the same, and that is whether any issues remain to be resolved.  Following the reasoning in *Crider*, we find that the judgment was final, and it disposed of all of the issues until Sofia starts five-year-old kindergarten.  While the chancellor in this case did not

4

specify the exact month and year in the final judgment as did the chancellor in *Crider*, the visitation schedule ends in February 2017[2], and the chancellor stated that the order is to remain in effect until further order of the court and only until Sofia starts five-year-old kindergarten. Furthermore, the chancellor gave the parties the option of agreeing to a future hearing to review custody or making the judgment a Rule 54(b) judgment. Either way, a future hearing was to be held to revisit custody. Formal recognition of the need to revisit custody before Sofia starts five-year-old kindergarten did not prevent the judgment from being final.

## II.   IMPRACTICALITY

¶11.   "[T]he polestar consideration in child[-]custody cases is the best interest and welfare of the child." *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). To that end, chancellors must conduct an *Albright* analysis, weighing each of the applicable factors. *Id*. Where both parties consent in writing to submit the issue of custody to the chancellor for his determination, and the chancellor finds both parents fit, joint custody may be awarded. *Crider v. Crider*, 904 So. 2d 142, 143-49 (¶¶3-17) (Miss. 2005). "[J]oint custody should not be awarded[, however,] where it is impractical or burdensome to the children." *Jackson v. Jackson*, 82 So. 3d 644, 646 (¶9) (Miss. Ct. App. 2011). The parents must also be capable of cooperating if joint custody is to be awarded. *Crider*, 904 So. 2d at 148 (¶16).

¶12.   Debra does not attack the soundness of the chancellor's *Albright* analysis, but argues that the chancellor failed to consider whether the joint-custody arrangement was practical due

---

[2] Sofia turns five in January 2017.

to the distance Sofia had to travel every month. Debra also claims the chancellor failed to consider whether the parties were capable of cooperating. Because we find that the joint-custody arrangement is impractical, we decline to address whether the parties are capable of cooperating.

¶13. "There have been prior decisions regarding initial joint-custody arrangements that became impractical after one or both parents moved." *Massey v. Huggins*, 799 So. 2d 902, 906 (¶11) (Miss. Ct. App. 2001) (citations omitted). In *McRee v. McRee*, 723 So. 2d 1217, 1218-19 (¶4) (Miss. Ct. App. 1998), this Court affirmed the chancellor's decision to modify custody based on the father's relocation to Houston, Texas. The chancellor found that "[t]he joint-custody agreement, which provided for the child to stay with each parent on alternating months, was impractical once [the father] moved to Texas." *Id*. at 1219 (¶6). He found that a modification was inevitable and that the question to be answered was who was to have primary custody. *Id*. The parties to that suit agreed. *Id*. In *Massey*, 799 So. 2d at 905-06 (¶¶6-13), this Court agreed with the chancellor that joint physical custody was impractical where one party moved to Long Beach, Mississippi, and the other to Petal, Mississippi. The chancellor was quoted as saying, "as I view the situation, the biggest change that has occurred, as far as these parties are concerned, is that their joint[-]physical[-]custody arrangements are not possible now because they live in different areas of the state." *Id*. at 906 (¶13). He stated that there would "have to be a change of [physical] custody" and that the issue was "whether it's going to be with the mother or father." *Id*. The initial custody arrangement in *Massey* had four exchanges between the parents each week, and both parents

6

sought sole custody upon modification. *Id*. at 905-06 (¶¶5-13).

¶14. There are also prior decisions that discourage the use of alternating custody arrangements. *Case v. Stolpe*, 300 So. 2d 802, 804 (Miss. 1974); *Brocato v. Walker*, 220 So. 2d 340, 343 (Miss. 1969); *Daniel v. Daniel*, 770 So. 2d 562, 567 (¶15) (Miss. Ct. App. 2000). *See also Lackey v. Fuller*, 755 So. 2d 1083, 1088-89 (¶¶27-29) (Miss. 2000). In *Daniel*, the child was alternating custody back and forth between Arkansas and Mississippi every two weeks. *Daniel*, 770 So. 2d at 563-66 (¶¶2-14). This Court, noting that this type of arrangement was to be discouraged, declined to make any changes because the child was nearing the age of five-year-old kindergarten, at which time the father was to exercise primary physical custody. *Id.* at 563-67 (¶¶2-15). We declined to interrupt what had become the child's regular routine. *Id.* at 567 (¶15).

¶15. After conducting an *Albright* analysis, the chancellor in this case found that joint custody was in Sofia's best interest, irrespective of the distance she would have to travel to spend time with each parent. We do not agree. Given the distance between San Antonio, Texas, and Brandon, Mississippi, a monthly alternating custody arrangement is not in Sofia's best interest. The distance between San Antonio and Brandon renders this custody arrangement impractical. In *McRee*, we agreed with the chancellor that an alternating monthly custody arrangement that shifted the child between Houston, Texas, and Jackson, Mississippi was impractical. *See Massey*, 799 So. 2d at 906 (¶13). The distance between San Antonio and Brandon is even greater. We, therefore, reverse the chancellor's judgment and remand this case for a reconsideration of the *Albright* factors and a determination of who

7

is to have primary custody of Sofia.

**¶16.  THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  WILSON, J., NOT PARTICIPATING.**